## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

(1) CHARLES WATIE, as Personal Representative )
of the ESTATE OF SHAWN WATIE, Deceased, )
                                         Plaintiff, )
                                                  ) Case No.: 20-cv-415-RAW
vs. )

(1) CITY OF SALLISAW, OKLAHOMA, ) ATTORNEY LIEN CLAIMED
(2) COTY BILES, and ) JURY TRIAL DEMANDED
(3) DEVIN HARRIMAN, )
                                         Defendants. )

## COMPLAINT

**COMES NOW** the Plaintiff, Charles Watie ("Plaintiff"), as Personal Representative of the Estate of Shawn Watie, Deceased, ("Mr. Watie" or "Decedent") and, for his Complaint against Defendants alleges and states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Charles Watie is the duly-appointed Personal Representative of the Estate of Shawn Watie.

2. Defendant City of Sallisaw, Oklahoma is a municipality located in Sequoyah County, Oklahoma. The City provides and employs the Sallisaw Police Department ("SPD").

3. Defendant Coty Biles ("Officer Biles" or "Defendant Biles") was at all times relevant hereto, a police officer employed by the SPD. At all pertinent times, Defendant Biles was acting within the scope of his employment and under color of State law. Based upon information and belief, Defendant Biles was a resident of Sequoyah County, Oklahoma at the time of the incidents described herein.

4. Defendant Devin Harriman ("Officer Harriman" or "Defendant Harriman") was at all times relevant hereto, a police officer employed by the SPD. At all pertinent times, Defendant

1

Harriman was acting within the scope of his employment and under color of State law. Also based upon information and belief, Defendant Harriman was a resident of Sequoyah County, Oklahoma at the time of the incident described herein.

5. The acts giving rise to this lawsuit occurred in Sequoyah County, State of Oklahoma.

6. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivations of rights secured by the Fourth and/or Fourteenth Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

7. The jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Fourth and/or Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

8. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, since claims form part of the same case or controversy arising under the United State Constitution and federal law.

9. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

**FACTUAL ALLEGATIONS**

10. Paragraphs 1 through 9 are incorporated herein by reference.

11. On the morning of March 14, 2019, Mr. Watie was walking to work along U.S. 59 South just outside of Sallisaw, Oklahoma.

12. Around that same time, SPD received a call that a man matching the description of Travis Lee Davis, an armed and dangerous escaped convict, was seen walking the around the same area of U.S. 59 South.

13. Mr. Watie looked nothing like Travis Lee Davis. Travis Lee Davis was Caucasian, light-complected, of slight build with a prominent tattoo of a pyramid on the front of his neck. By contrast, Mr. Watie was Native American, olive-complected, heavyset and with no neck tattoos.

14. Nonetheless, when Officer Harriman responded to the call, he purportedly mistook Mr. Watie for Travis Lee Davis.

15. At the time that Officer Harriman approached Mr. Watie, he had committed no crime, done nothing wrong and was merely walking to work.

16. Officer Harriman aggressively approached the innocent Mr. Watie with his gun drawn, screaming at him to get on his knees.

17. On information and belief, Mr. Watie tried to inform Officer Harriman that he had done nothing wrong and was not the suspect they were looking for. Indeed, it was obvious that Mr. Watie was not Travis Lee Davis, as he bore no physical resemblance to him at all.

18. Still, on information and belief, Officer Harriman continued to escalate the situation, loudly creaming at Mr. Watie to get down in his knees and unreasonably refusing to listen to Watie's explanation that he had committed no crime and was not the man the officers were looking for.

19. Biles arrived on the scene as Officer Harriman continued to scream at the innocent Mr. Watie.

20. Biles also unreasonably failed to recognize that Mr. Watie did not match the description of Travis Lee Davis.

21. On information and belief, when Mr. Watie would not comply with Officer Harriman's unjustified and overly-aggressive orders that he get on his knees, Harriman grew aggravated. On information and belief, as Mr. Watie continued to attempt to explain that he had done nothing wrong, Harriman fired shots from his service weapon at, and into, Mr. Watie.

22. Biles responded to Harriman firing shots at Watie by also shooting at Mr. Watie with his service weapon.

23. At the time that Officer Harriman and Biles used deadly force on Mr. Watie, he had committed no crime.

24. At the time that Officer Harriman and Biles used deadly force on Mr. Watie, he did not pose an immediate threat of serious harm to himself, the officers, or anyone else.

25. Officer Harriman and Biles shot Mr. Watie dead in the street. He was only 28-years-old.

26. The Medical Examiner later found that Mr. Watie was shot in the back twice, shot once in the lateral left lateral shoulder, shot once in the palm of his right hand, shot in the left 5th finger, shot in the right 3rd finger and shot once in the chest.

27. The Medical Examiner further determined the cause of Mr. Watie's death to be "multiple gunshot wounds."

28. Officers Harriman and Biles' use of deadly force on Mr. Watie constitutes excessive and objectively unreasonable force in violation of Mr. Watie's clearly established constitutional rights.

29. Due to the excessive use of force, Mr. Watie suffered multiple gunshot wounds, extreme physical pain, mental and emotional anguish, and death.

4

30. There are unabated and long-standing practices, policies, and/or customs of excessive force, failure to adequately train, and failure to adequately supervise within the Sallisaw Police Department.

31. The City of Sallisaw has been on notice of tortious conduct committed by its officers and has failed to address or correct them.

32. Despite being on notice as to the likelihood of Constitutional deprivations of citizens' right to be free from excessive use of force, the City of Sallisaw has failed to adequately train and supervise its police officers with respect to: (A) de-escalation techniques; (B) the Fourth Amendment; (C) current use of deadly force caselaw; (D) the use of deadly force continuum; (E) the use of less lethal force when a suspect does not pose an immediate threat of serious harm; (F) probable cause; (G) identifying suspects; (H) proper use of verbal commands; and (I) the use of deadly force, generally.

33. There is a causal nexus between these failures to train and supervise and the violation of Mr. Watie's Constitutional rights.

34. Thus, the City is liable under a municipal liability theory.

## CAUSES OF ACTION

### CLAIM I
### EXCESSIVE USE OF FORCE
**(Fourth Amendment; 42 U.S.C. § 1983)**

35. Paragraphs 1 through 34 are incorporated herein by reference.

36. At the time of the complained events, Mr. Watie had a clearly established constitutional right under the Fourth Amendment to be secure in his person and free from objectively unreasonable excessive force to injure him and his bodily integrity.

37. Any reasonable officer knew or should have known those rights at the time of the complained of conduct as they were clearly established.

38. At the time the deadly force was used by Officers Harriman and Biles, they did not have probable cause to believe that Watie posed a threat of serious physical harm to himself or others and that deadly force was unnecessary to restrain Mr. Watie or secure the safety of officers, the public, or Mr. Watie himself.

39. In addition, Officers Harriman and Biles' actions preceding the use of deadly force were reckless and unnecessarily escalated the dangerousness of the situation.

40. Officers Harriman and Biles fired at Mr. Watie several times in quick succession, hitting him numerous times and causing his injury and death.

41. Officers Harriman and Biles applied objectively unreasonable and excessive physical force on Mr. Watie, thereby causing him serious bodily injuries, as well as mental pain and anguish, that ultimately resulted in his death.

42. As a direct and proximate result of Officers Harriman and Biles' unlawful conduct, Mr. Watie suffered actual physical injuries, mental and physical pain and suffering, death, and other damages and losses as described herein entitling Plaintiff to recover compensatory and special damages in amounts to be determined at trial.

43. The City is liable for its own policies and customs that were a moving force behind Mr. Watie's Constitutional injuries.

44. There are unabated and long-standing practices, policies and/or customs of excessive force, failure to adequately train and failure to adequately supervise within the Sallisaw Police Department.

45. The City of Sallisaw has been on notice of tortious conduct committed by its officers and has failed to address or correct them.

46. Despite being on notice as to the likelihood of Constitutional deprivations of citizens' right to be free from excessive use of force, the City of Sallisaw has failed to adequately

6

train and supervise its police officers with respect to: (A) de-escalation techniques; (B) the Fourth Amendment; (C) current use of deadly force caselaw; (D) the use of deadly force continuum; (E) the use of less lethal force when a suspect does not pose an immediate threat of serious harm; (F) probable cause; (G) identifying suspects; (H) proper use of verbal commands; and (I) the use of deadly force, generally.

47. There is a causal nexus between these failures to train and supervise and the violation of Mr. Watie's Constitutional rights.

48. Thus, the City is liable under a municipal liability theory.

## CLAIM II
## NEGLIGENT USE OF EXCESSIVE FORCE
### (City of Sallisaw)

49. Paragraphs 1 to 48 are incorporated herein by reference.

50. In Oklahoma, "[a] defendant is generally said to owe a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks that make the conduct unreasonably dangerous." *Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dep't*, 230 P.3d 869, 878 (Okla. 2010).

51. Because, however, the act of making an arrest necessarily involves some risk of harm to the arrestee, "a police officer has a special dispensation from the duty of ordinary care not to endanger others." *Id*. at 880.

52. In particular, "[a] police officer's duty … is to use only such force in making an arrest as a reasonably prudent police officer would use in light of the objective circumstances confronting the officer at the time of the arrest." *Id*.

53. Here, Officers Harriman and Biles owed a duty to Mr. Watie to use only such force in securing his cooperation as a reasonably prudent police officer would use in light of the objective circumstances confronting the officer at the time of the incident.

7

54. Officers Harriman and Biles violated and breached that duty by using objectively unreasonable and excessive force as described herein.

55. As a direct proximate result of Officers Harriman and Biles' negligence, Mr. Watie suffered actual physical injuries, mental and physical pain and suffering, death, and other damages and losses as described herein entitling Plaintiff to recover compensatory and special damages in amounts to be determined at trial.

56. At all pertinent times, Officers Harriman and Biles were acting within the scope of their employment and the City is vicariously liable for their negligent use of excessive force.

## **PUNITIVE DAMAGES**

57. Paragraphs 1 through 46 are incorporated herein by reference.

58. Plaintiff is entitled to punitive damages on his federal claims against Defendants Biles and Harriman, as their conduct, acts, and omissions alleged herein constitute reckless or callous indifference to Mr. Watie's rights.

## **PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, Plaintiff prays this Court grant him the relief sought, including but not limited to actual and compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from the date of filing suit, the costs of bringing this action, a reasonable attorneys' fee, along with such other relief as is deemed just and equitable.

Respectfully submitted,

/s/Daniel E. Smolen
Robert M. Blakemore, OBA #18656
Daniel E. Smolen, OBA #19943
**Smolen & Roytman**
701 S. Cincinnati Ave.
Tulsa, Oklahoma 74119

8

P: (918) 585-2667
F: (918) 585-2669

**Attorneys for Plaintiff**

9